**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 N. California Boulevard, Floor 9
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
sbogdanovich@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JAMES WHALEN and VICTOR FUENTES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NBA PROPERTIES, INC.

Defendant.

Case No. 3:25-CV-01030-CRB

**PLAINTIFFS' STATEMENT OF RECENT DECISION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND COMPEL ARBITRATION**

Date: July 10, 2025
Time: 9:30am (Zoom)
Courtroom: 6, 17th Floor
Judge: Hon. Charles R. Breyer

Pursuant to Northern District Local Rule 7-3(b)(2), Plaintiffs bring to the Court's attention Judge Araceli Martínez-Olguin's recent decision in *Dawson v. Target Corp.*, Case No. 3:24-CV-08167-AMO, 2025 WL 1651940, at *3 (N.D. Cal. June 11, 2025), decided after Plaintiffs filed their opposition to Defendant's motions to transfer arbitration in this action.

In *Dawson*, Judge Martínez-Olguin held that the following mobile phone screens were "too inconspicuous to confer reasonable notice" and "particularly problematic … because they lack a contrasting color and are in the same black text as the majority of the text on the screens." 2025 WL 1651940, at *3. *See* Case No. 3:24-CV-08167-AMO, ECF No. 23-4 at 3 and 7 (N.D. Cal. Feb. 7, 2025).







A copy of the Order is attached hereto as Exhibit 1, and a copy of the declaration featuring these screenshots is attached hereto as Exhibit 2.

Dated: July 2, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Stefan Bogdanovich*
Stefan Bogdanovich

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 N. California Boulevard, Floor 9
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
sbogdanovich@bursor.com

*Attorneys for Plaintiffs*

**EXHIBIT 1**

2025 WL 1651940
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

DYLAN DAWSON and JAMIE BROWN, on behalf of themselves and all others similarly situated, Plaintiffs,
v.
TARGET CORPORATION, SHIPT, INC., and DOES 1- 50, inclusive, Defendant.

Case No. 3:24-cv-08167-AMO
|
[Removed from Superior Court of California, County of San Francisco, Case No. CGC-24-618269]
|
Filed 06/11/2025

**ORDER DENYING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION**

ARACELI MARTÍNEZ-OLGUÍN United States District Judge

***1 Filed: September 19, 2024**

**Removed: November 19, 2024**

**Trial: Not set**

Before the Court are Defendant Target Corporation's ("Target") and Defendant Shipt, Inc.'s ("Shipt") (collectively, "Defendants") Motions to Compel Arbitration (Dkt. Nos. 23, 21), (the "Motions"). The Court, having considered the pleadings submitted by Plaintiff Dylan Dawson ("Plaintiff Dawson"), his Opposition to the Motions, (Dkt. No. 39), Defendants' reply briefs, (Dkt. Nos. 41, 43), and Plaintiffs' objection to Defendants' new evidence submitted on reply (Dkt No. 45), **DENIES** Defendants' Motions for the reasons below.

The touchstone of arbitration is consent. *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1191 (2024). Defendants have failed to satisfy their burden to prove that an enforceable agreement to arbitrate exists because they have not demonstrated by a preponderance of the evidence that Plaintiff Dawson was on notice of, and unambiguously assented to, Defendants' arbitration agreement (the "Arbitration Agreement").

At the outset, the Court finds that California law governs the question of contract formation irrespective of the Minnesota choice of law provision in Target's Terms and Conditions. Because the Court finds that Plaintiff Dawson did not agree to Target's Arbitration Agreement for all the following reasons set forth herein, he could not have agreed to any choice of law provision, either. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("[W]hether the choice of law provision applies depends on whether the parties agreed to be bound ... in the first place."); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established."). Nevertheless, the Court finds the outcome would be the same under Minnesota law. *Compare Herzog v. Super. Ct.*, 101 Cal. App. 5th 1280, 1293 (2024) *with Vermillion State Bank v. Tennis Sanitation, LLC*, 947 N.W.2d 456 (2020). Further, the law of this Circuit is unequivocal that the question of whether a valid agreement to arbitrate was formed in the first instance must be answered by this Court, and not an arbitrator, regardless of any delegation provision or incorporation of arbitral rules. *See Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) ("challenges to the very existence of the contract are, in general, properly directed to the court"). The Court finds no agreement to arbitrate was formed for multiple reasons.

First, Defendants have not met their burden to prove Plaintiff Dawson unambiguously assented to arbitration. Defendants do not contend Plaintiff Dawson was on *actual* notice of the Arbitration Agreement, and Plaintiff Dawson attests he never saw it. Declaration of Dylan Dawson ("Dawson Decl.") (Dkt. No. 39-1) ¶ 8. In the absence of *actual* notice, Defendants must prove that Plaintiff Dawson was on *inquiry* notice of the Arbitration Agreement. To prove inquiry notice, Defendants must demonstrate "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Further, the standard on a Motion to Compel Arbitration is akin to a Motion for Summary Judgment. *See Hansen v. LMB Mortg. Servs., Inc.*,1 F.4th 667, 670 (9th Cir. 2021). As such, the Court must draw all reasonable inferences in favor of the non-movant. *See Lopez v. Dave, Inc.*, No. 22-16915, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023).

***2** Here, drawing all reasonable inferences in favor of the non-movant, this Court finds that the evidence submitted with Target's Motion—upon which Shipt also relies—is insufficient to demonstrate an agreement to arbitrate. The proffered screenflows attached to the Declaration of Allison Yem ("Yem Decl.") (Dkt. No. 23-4) purport to be screenshots of how Target's Terms and Conditions were displayed on a mobile application for the three instances in which Defendants contend Plaintiff Dawson may have been put on notice of and assented to arbitration—at (1) account creation, (2) account sign-in, and (3) check-out. But none of these screens satisfy Defendants' burden because Defendants have not demonstrated that they are the same screens Plaintiff Dawson would have seen when he first created his Target account in 2014, or when he made his alleged purchase on June 14, 2024.

With respect to Target's account creation process, Target provides no evidence as to what this process looked like when Plaintiff Dawson first created his Target account in 2014. *See* Dawson Decl. ¶ 3. Instead, the Yem Declaration submits an undated account creation screenflow, which Yem attests has been the similar screen since October 2022. Yem Decl., ¶ 8. There is no evidence in the record—because Defendants provide none—that Target even had an arbitration agreement in its Terms and Conditions in 2014, let alone that Plaintiff Dawson agreed to them at that time. Target cannot rely on screenflows from 2022 to prove consent in 2014. *See Snow v. Eventbrite, Inc.*, No. 3:20-cv-3698-WHO, 2020 WL 6135990, at *8 (N.D. Cal. Oct. 19, 2020) (denying motion to compel when defendant relied on screenshots from the present day to demonstrate assent that purportedly took place years prior). Thus, the Court finds Defendants have not demonstrated Plaintiff Dawson agreed to arbitrate when he signed up for a Target account in 2014.

Nor does the "sign-in" screen establish that Plaintiff Dawson unambiguously agreed to arbitrate. Critically, Target does not establish Plaintiff Dawson encountered this screen at all—let alone in June 2024. As Plaintiffs point out, both the account creation screen and the sign-in screen provide the consumer the option to "keep me signed in." In its opening brief, Defendants produced no evidence as to whether Plaintiff Dawson made this election. For the first time on reply, Target submitted a second declaration of Allison Yem ("Supplemental Yem Declaration") (Dkt. No. 41-1), which improperly introduced new evidence to support new arguments as to Plaintiff Dawson's supposed interaction with the "sign-in" screen. The Court declines to consider that new evidence. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Target bore the burden to demonstrate its entitlement to relief in its opening brief, and it had the opportunity to disclose this evidence from the outset. Indeed, as the Court warned Defendants at the discovery hearing held February 24, 2025, they may not use their reply briefs to introduce new facts to argue how and when Plaintiff Dawson supposedly assented to arbitration. The Court refuses to consider this improperly submitted evidence. Accordingly, this Court **SUSTAINS** Plaintiff's objection to the new evidence submitted by Target on reply, **STRIKES** paragraphs 3-8 of the Supplemental Yem Declaration, and disregards Defendants' related arguments based on this improper submission in their entirety. Again, drawing all reasonable inferences in favor of Plaintiff Dawson, as the Court must, the Court finds Defendants have not demonstrated Plaintiff Dawson agreed to arbitrate vis-à-vis a "sign-in" screen that he may never have seen.

Finally, the check-out screen similarly fails to establish unambiguous assent because the screen attached to the Yem Declaration does not accurately depict the check-out process as it appeared to Plaintiff Dawson on an iPhone when he completed his purchase on June 14, 2024. While Yem declares this screen "looks the same today for people seeking to use the Target app for same day delivery on any device[,]" the screenshot attached to Dawson's Declaration, and contrary to the screenshot presented by Yem, show that Target's Terms & Conditions are *not visible* when using the iPhone mobile app unless a consumer chooses to scroll to the very bottom of the screen (which is unnecessary to complete a purchase). Dawson Decl., ¶¶ 6-7. This fact is critical. As the California Court of Appeals has made clear, consumers will not be "bound by inconspicuous contractual provisions of which he was unaware, contained a document whose contractual nature is not obvious." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021). Requiring consumers to hunt for Terms & Conditions buried at the bottom of a screen is insufficient to establish unambiguous assent. *Berman*, 30 F.4th at 857. Thus, Defendants have not demonstrated Plaintiff Dawson agreed to arbitrate on the check-out screen.

***3** In sum, Defendants have failed to meet their burden of demonstrating Plaintiff Dawson unambiguously agreed to arbitrate because Defendants have not provided any admissible evidence demonstrating the actual screens Plaintiff Dawson would have seen at account creation, sign-in, or check-out. In the absence of such evidence, the Court

will draw all reasonable inferences in favor of Plaintiff and deny the Motion.

Second, the Court finds that Target's proffered screenflows fail to provide reasonable notice of Target's terms, even if Dawson had been presented with the screens put forth in the Yem Declaration (and again, the Court concludes there is no basis to find that he was). Target's screenflows are "sign-in wrap" agreements, because "the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla v. ClassPass, Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025). Applying the criteria set forth by the California Court of Appeals in *Sellers*, this Court concludes Target's screens failed to clearly and conspicuously put Plaintiff Dawson on reasonable notice of arbitration, even assuming he was presented with them. *See* 73 Cal. App. 5th at 473.

The hyperlinks and preceding disclaimers on those screenflows are too inconspicuous to confer reasonable notice because they are presented in a small text size, difficult to read, and are not sufficiently obvious or set apart from the rest of the text on the screen. *Berman*, 30 F.4th at 856-57. The hyperlinks on the account creation and check-out screens are particularly problematic in this regard because they lack a contrasting color and are in the same black text as the majority of the text on the screens. *See e.g., Massel v. SuccessfulMatch.com*, 718 F. Supp. 3d 1112, 1117 (N.D. Cal. 2024) (denying motion to compel arbitration in clickwrap agreement because hyperlinked terms were underlined, but "appeared in the same dark gray color as the unlinked text in the rest of the sentence"); *Lopez*, 2023 WL 8594393 at *1 (no reasonable notice even where the hyperlinked terms were underlined because they were in tiny grey font and in sentence caps). Although the hyperlink on Target's sign-in screen (if it was ever displayed to Plaintiff Dawson, which Plaintiff Dawson contests) is denoted in blue, the color contrast alone is insufficient to salvage the overwhelming inconspicuousness created by its small font size and placement that otherwise causes the Terms & Conditions to blend into the screen. *See e.g., Chabolla v. ClassPass, Inc.*, 2023 WL 4544598, at *4 n.3 (N.D. Cal. June 22, 2023), *aff'd* 129 F.4th 1147, 1154 (9th Cir. 2025) (denying motion to compel arbitration in sign-in wrap agreement even where terms were hyperlinked in blue font because "this [color] alone does not make the text notice of the Terms conspicuous in light of the other deficits identified" such as the tiny font size); *Farmer v. BarkBox, Inc.*, 2023 WL 8522984, at *2 (C.D. Cal. Oct. 6, 2023) (holding "modified clickwrap" presenting terms in blue, underlined hyperlink located immediately above the mechanism for assent did "not satisfy the objective reasonableness standard" in the Ninth Circuit because it was in similar miniscule font).

Further, the hyperlinked terms and preceding disclaimers on Target's sign-in and check-out screens are also spatially decoupled from the relevant buttons to proceed with the transactions and manifest assent to those terms. On the sign-in screen (if encountered at all), a user need only enter their email or phone number and password in the fields located at the very top of the screen and then click the glaring red buttons in the middle of the screen to proceed. And the current version of the check-out screen confirms that a user would have no reason to scroll through the entirety of the screen to click "Place your order" because the order total is located at the very top of the screen. The lack of spatial proximity between the Terms and Conditions and the mechanism for assent forecloses reasonable notice of those terms. *See e.g., Metter v. Uber Tech., Inc.*, 2017 WL 1374579 (N.D. Cal. Apr. 17, 2017) (denying motion to compel arbitration where hyperlinked terms were at the bottom of the screen and "the registration and payment screen neither instructed [plaintiff] to scroll down nor presented any reason for him to do so").

***4** At bottom, Target's proffered screens do not confer reasonable notice of arbitration, and thus, "any action the user takes on the page[s] cannot unambiguously manifest [his] assent to those terms." *Chabolla*, 129 F.4th at 1158. Accordingly, because it is Defendants' burden to prove that a valid, enforceable agreement to arbitrate was formed by a preponderance of the evidence, and they failed to do so, their Motions must be denied. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1651940

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 2**

BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Victor Sandoval (SBN 344461)
victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:424.239.3400
Facsimile: 424.239.3434

Attorneys for Defendants
TARGET CORPORATION
and SHIPT, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DYLAN DAWSON AND JAMIE BROWN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TARGET CORPORATION, SHIPT, INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:24-cv-08167-AMO<br><br>[Removed from Superior Court of California, County of San Francisco, Case No. CGC-24-618269]<br><br>**DECLARATION OF ALLISON YEM**<br><br>Complaint Filed: September 19, 2024<br>Complaint Served: October 21, 2024<br>Removed: November 19, 2024<br>Trial Date: Not Set |

I, Allison Yem, declare:

1. I am a resident of St. Louis Park, Minnesota, and over the age of eighteen (18) years. I am Senior Product Manager at Target Corporation ("Target"). As such, I oversee the Target App & Web Experience for Same Day Delivery Fulfillment - Digital Guest Experience. I am familiar with the Same Day Delivery guest experience when placing orders, as a part of my job duties. I have worked for Target since October 2011. I have personal knowledge of the facts stated herein, based on my knowledge of Target's processes and review of files kept in the ordinary course of business, and I am otherwise competent to testify. The processes described herein were in effect at all relevant times of Plaintiffs' account activity.

2. When an individual downloads the Target mobile phone application (the "Target app") onto their device, the Target app requires that the user select one of three options: (1) sign-in to a pre-existing Target account, (2) create a new Target account, or (3) browse the Target app as a guest.

3. The page that appears when a user elects to create a new Target account is the same account creation page that is discussed and displayed in paragraph 10 below.

4. The page that appears when a user elects to sign-in to a pre-existing Target account is the same sign-in page that is discussed and displayed in paragraph 12 below.

5. If the user elects to browse the Target app as a guest, they are not presented with either page, and are able to browse the Target app without signing in to a Target account.

6. However, before a user that had elected to browse the Target app as a guest is able to start the process for placing an order for same-day delivery on the Target app, the user must create, or sign-in to, a Target account. This is true for all users on any type of device.

7. When a Target app user attempts to adds an item to their cart for same day delivery, and the user is not signed in to a Target account, the user is prompted to add a delivery address to confirm the availability of same day delivery to that address.

8. A user must add a delivery address before they can add an item to their cart for same day delivery.

9. When a user chooses to add a delivery address, they are redirected to a screen that offers the user two options: (1) sign-in to a pre-existing Target account, or (2) create a new Target account.

10. When a user chooses to create a Target account, the user is presented with a page which states, "[b]y creating an account, you are agreeing to the Target terms & conditions" and which hyperlinks to Target's Terms and Conditions immediately above the "Create Account" button. A screenshot of how the account creation page appears to users is displayed below.



11. If a user does not complete these steps, they will be unable to create a Target account, meaning that user will not be able to place an order for same-day delivery in the Target app. This is true for all users on any type of device.

12. Each time that a user signs-in to their Target account, the user is presented with a page which states, "[b]y signing in, you agree to the following:" immediately followed by a hyperlink to Target's Terms and Conditions. A screenshot of how the sign-in page appears to users is displayed below.




13. Once a user is signed-in to a Target account, the user can add a delivery address to their account. If the user has a delivery address added to their account, and an item is available for same day delivery to that delivery address, the user is able to add an item for same day delivery to their cart. If a user successfully adds an item for

same day delivery to their cart, a screen appears that confirms that the item was added to cart, and allows the user to choose to either continue shopping, or view their cart.

14. Once the user chooses to view their cart, they are presented with the cart page. The cart page is the page on which the user can initiate the check-out process. The cart page also discloses that the CA Shopper Benefits Fee will be charged. Scrolling screenshots of how the cart page appears to users are displayed below.




15. If the user selects the information button next to "Regional fees," on this page or the check-out page discussed below, a pop-up appears that displays for information about the CA Shipt Shopper Benefit Fee. A screenshot of that pop-up is displayed below.

[*image on next page*]




16. To initiate the check-out process, the user must select the "check out" button at the bottom of the cart page. After the user initiates the check-out process, they are presented with options to schedule their delivery. After the user selects a time for their delivery, they are redirected to the check-out page. The check-out page is the final page in the check-out process. Once the user selects the "place your order" button at the bottom of the page, the user has committed to the delivery transaction. The check-out page also discloses, for the second time in the check-out process, that the CA Shopper Benefits Fee will be charged. A screenshot of how the check-out page appeared to users is displayed below, with the email address and credit card information of the user redacted.

[*image on next page*]




17. I am informed that the plaintiffs in this matter made purchases on or around June 14, 2024, and October 15, 2022. A true and correct copy of Target's Terms and Conditions in effect on June 14, 2024, is attached hereto as Exhibit A. A true and correct copy of Target's Terms and Conditions in effect on October 15, 2022, is attached hereto as Exhibit B.

18. The manner in which the Terms and Conditions were displayed to the user, and the Terms and Conditions acceptance process, for account creation, account sign-in, and check out, looked substantively identical to that discussed above on and around June 14, 2024 (when Dawson logged into his account and placed an order), and October 15, 2022, regardless of the device or platform used.

19. The manner in which a user must check-out for same day delivery orders in the Target app, looked substantively identical to that discussed above in June 14, 2024, and October 15, 2022, regardless of the device or platform used and looks the

same today for people seeking to use the Target app for same day delivery on any device.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 6, 2025 in Minnesota.

[signature]

Allison Yem